Can you please be seated? Mr. Wigman. Good afternoon, Your Honor. May it please the Court, Counsel, I am Jay Wigman, an assistant appellate defender with the Office of the State Appellate Defender. Counsel for defendant appellant Stephen Bailey, who made two assertions here on direct appeal. The first, that the trial court erred when it entered a partial summary dismissal of the defendant's pro se petition. And second, that the matter should have been extended to an evidentiary hearing, which was required because the defendant was able to substantially demonstrate that he was denied the effective assistance of counsel. For counsel's failure to either call the defendant's witness or defendant's father as an alibi witness, or to even contact his father to investigate the claim, that he could provide an alibi. Within the brief, I listed the issues in that order. For purposes of this argument, my intent is to reverse the order of the issues. The first issue is fairly narrow and I think easily settled. The second issue is more complicated and involved. And given my tendency toward verbosity, I felt it was best to start with one rather than risk running out of time. If I do run out of time, I'll stand on the briefs. If time remains, I will address that issue. And certainly, I hope it goes without saying that should this court have questions about that issue at any time, I'm happy to answer them. Turning to what I will call then the first issue, the facts are relatively simple and easily stated. The defendant was convicted primarily on the basis of an accomplice witness who was originally charged with first degree murder, ended up negotiating to a lesser charge, and received a three-year sentence. After this court affirmed Stephen Bailey's conviction on direct appeal, the defendant filed a post-conviction petition. To it, he attached a sworn affidavit from his father that said that the defendant had been at his house at the time of the offense, and that defense counsel had been made aware of this, but had failed to even interview the defendant's father. The defendant asserts that this is error, and that the matter should have been directed to the third stage, because when the issue concerns the ineffectiveness of counsel for failing to call a witness, there is an open question that cannot be resolved at the second stage as to whether that is simply a matter of incompetence, or whether it is a strategic decision. And even if it is a strategic decision, a third stage evidentiary hearing is required to determine whether the strategy was sound. The failure to call a known expulsory witness is a classic example of ineffective assistance of counsel. You can't say that the decision was strategic, because it's unknown as to whether the counsel even talked to the defendant's father. For this reason, the circuit court erred when it surmised that counsel had decided that the jury might automatically assume that the father was going to vouch for his son, whether or not that was called for. But such a decision can't be made in the absence of interviewing the father or investigating the claim in any other fashion. It simply is not something that can be claimed as a matter of law for this court or the circuit court to have said, well, this would be a good reason for not calling the defendant's father. Thus, the basis that was hypothesized by the circuit court is unsupported by the evidence. It simply can't be said that it was strategy as a matter of law. And for that, I rely upon People v. Tate. Secondly, a factual finding is not permitted at this stage. Cabrera, in particular, Tate, Coleman have all said that at this stage, this type of determination can't be made. Evidence has to be presented to determine whether or not it was a strategic decision or merely incompetence. And even if counsel had investigated, then the question is whether or not this is a sound strategic decision. There are certainly instances within the case law, and they're cited within the briefs, that indicate that there are times when family members are not going to be good witnesses. But generally, it's not because they're family members, but because there was some other aspect of their testimony that was going to be detrimental to the defendant. In some instances, as in Lacey, cited by both defendant and the state, it was a matter of the witness's proposed testimony being clearly contradicted by the record and making claims that were detrimental to the defendant. Typically, in those instances, it's considered sound strategy for counsel not to call the witness. This is not necessarily one of those situations. There is nothing within the record that rebutts the proposed testimony that would have been given by the father. He said that his son was with him, that they were playing video games until 4.30 in the morning, that then they went to bed. When the father left for work at 7 a.m., his son was still there. The trial court, in looking at this affidavit, misread the affidavit and misapplied the information. The court said, well, it said that he left at 4 a.m., but that is clearly not what the affidavit says. Moreover, assuming for the sake of argument that it had said that he left at 4 o'clock, the police were called regarding the shooting at 2.45 in the morning. So the fact that the defendant was there until 4 o'clock, even if that's the time that he had left, though it's not what the affidavit says, would have meant that the defendant had an alibi. Again, simply because the father is a relative does not mean that he's disqualified as a witness. If anything, it's a more significant disqualification as a witness, but it's still allowed by the case, an accomplice witness. And because the accomplice witness has an obvious interest and in this case received a sweetheart deal for his testimony, there's no reason to say that pairing up these two witnesses, one against the other, is necessarily not going to be of benefit to the defendant. In fact, it has been stated specifically, I believe within Tate, that where you have an alibi witness, prejudice is almost presumed. It's assumed that an alibi witness, particularly when going up against a witness whose veracity is as incredible as in the instant case with Torlando McDonald, when there's that much of a question, it can almost be automatically assumed that having an alibi witness is going to be of benefit. And for that reason, prejudice is considered to be substantiated at the second stage, requiring passing on to the third stage. At that point, maybe the credibility comes into question. And at that stage, certainly credibility can be judged by the prior fact. But it can't be judged at this stage of things because it lies outside of the record. And therefore, credibility and fact-finding cannot occur at the second stage. Again, prejudice has already been established. And I believe the direct quote is from Cleveland, actually, that says, at paragraph 60, it seems clear that putting on alibi evidence before the jury would have increased the defendant's chance of acquittal. And that certainly was the case here. Because the defendant has shown that there is a substantial likelihood that he would have been able to alter the outcome at trial. And because he has definitely shown that the competence of counsel and whether the defendant was provided his right to the effective assistance of counsel has clearly been called into question, the defendant should have had this matter advanced to the third stage. Turning to, again, and I apologize for the confusion, depending on how you look at it, the first or second entry, the first within the brief, the trial court was also wrong to have entered a partial dismissal. And it was a different judge at the second stage, or I'm sorry, at the first stage than it was at the second and third stages. Judge Shaw did enter a partial dismissal at the first stage. The defendant had raised three issues. One, we've already discussed the ineffective assistance of counsel for failing to call the defendant's father as a witness. Second, the state's failure to test certain evidence. And third, prosecutorial misconduct in closings. Judge Shaw had clearly entered by advancing the third issue, or I'm sorry, the first issue, but dismissing the other two. The court in Rivera reversed actually this court and said that partial dismissal is not allowed. The act refers to the petition, not the individual claims within the petition. Therefore, if one passes, they all pass on to the next stage. Rivera then focused on what the proper remedy was. But in Rivera, what had happened was that the issues that had been partially dismissed were then re-raised by the defendant who filed a pro se modification when it advanced to the second stage, spoke with counsel, counsel then adopted those issues and incorporated them into the motion that he was required to file. The state responded, filed a motion to dismiss including those issues, a hearing was held, and at the end of the hearing, those issues were dismissed by the trial court. One other was raised on to the third stage. So in Rivera, there was no need once the issue reached the Supreme Court or even the appellate court level for the matter to go back because the issue had already been discussed. There had been a hearing and the defendant in that way was able to get his issues presented to the court. That didn't happen in this case and it's required that those should have gone on. Therefore, we're asking for remand back for the second stage. The state has argued that the issue was abandoned and primarily the state relied upon People versus Sandoval and Carrillo. However, in that case, there was a question in the appellate court's mind as to whether the defendant had even raised that issue in the petition at all. And certainly, it wasn't then furthered at the second stage. And in reply, the state did not address the issue that the defendant then claimed in the third stage was at issue. It was more of a sub-argument or some way to bolster the primary argument, but it wasn't even clear to the court that that issue had been raised, much less abandoned. Here, there was no abandonment of the argument. The trial court said, these issues are foreclosed, I'm dismissing them, we're moving on in addressing these issues. Counsel can't be expected then at that point to further preserve the issue to object and raise the issue when the court's order was clear that those matters were being dismissed. Therefore, if there are no further questions, I would conclude by asking that this court remand this matter for second stage hearing as to the partially dismissed issues and for the third stage hearing on an evidentiary basis to determine whether counsel's decision was the result of incompetence or whether it was sound strategy. Thank you, Mr. Wigman. Mr. Leonard. May it please the court, counsel, I'll follow the same format that Mr. Wigman followed. I'll address the second issue in the brief first. In that case, the case of People v. Lacey is directly on point here. I believe it should be followed by this court. In Lacey, defense counsel did not call Lacey's aunt as an alibi witness. Lacey's aunt had filled out an affidavit stating that the defendant was at her house at the time of the crime and she further stated that Lacey was not allowed to go to Chicago Heights but the defendant was arrested at Chicago Heights. Defense counsel did not raise, defense counsel did not call Lacey's aunt. He chose not to do that. The appellate court found that this was trial strategy and not ineffective assistance of counsel and it was immune from a claim of ineffective assistance of counsel. Let me just ask you though, in Lacey, the affidavit, they alleged that she had indeed met with the public defender's office and they didn't call her and so the affidavit showed that the public defender had an opportunity to meet and judge credibility and stuff like that where in the case before there's an allegation that the father was never interviewed by defense counsel. That's true and with response to your question, defense counsel here knew what the father's testimony was going to be and at the evidentiary hearing, he testified that he chose not to call the defendant's father as a witness because he believed that the jury would not believe the defendant's father because he was related to the defendant's father. But the further reason for denying the defendant's relief here is... Let me ask you, so you've got an accomplice witness. What does the defendant have to lose by putting somebody on the witness stand saying he didn't do it, he's with me? He doesn't have anything to lose but perhaps the defense counsel here questioned the defendant's veracity. This court found on direct appeal that the evidence of the defendant's guilt was overwhelming. Of course the Supreme Court rules of professional responsibility maintain that a defense attorney or any attorney cannot put on testimony which he believes is false. Not that he believes, that he knows is false. A defense attorney isn't a human lie detector and you can't knowingly put on false testimony. That's correct. You suspect it's false but you don't know it. You have an obligation to put on evidence that might help the client's case. Only if it's the defendant who wants to present the testimony. If the defense attorney has a good faith belief that the defendant's father's testimony was not true then he has an obligation not to present that testimony. Wouldn't your argument be better made if he had actually met with them? I don't understand how to develop a strategy without any investigation. Sure, he found out from the defendant what the defendant's father was going to testify to and he made the strategic decision. He testified at the evidentiary hearing that he did not believe that the father's testimony would be helpful in this case because he was related to the defendant. And that was his strategic decision. I believe that because it was his strategic decision not to put on that evidence he had a good understanding of what the father was going to testify to anyway. Sure he could have investigated and spoke with the defendant's father but there was not much more he could gain because the defendant already told him what his father was going to testify to that he would say that the defendant was at his house rather than at the crime. Well, the second reason for denying the defendant relief is the defendant's father's claim is rebutted by the evidence in this case by the record. You can't have McDonald's testimony who said that the defendant was at the crime and somehow have the father's testimony that the defendant was not at the crime. Again, I refer to this court's decision on Drekkenfield that they found the evidence was overwhelming. In this situation, this defense attorney made the strategic decision that this was not going to be helpful information and probably not credible because of the defendant being related to the defendant's father. So I believe that Pupil v. Lacey is directly on point here and that this court should follow Lacey and deny the defendant's relief at this second stage of the proceeding. The defense counsel knew what the defendant's father was going to testify to. Sure, it would have been better if he went and talked with them but he would not have learned anything different than the defendant's father claiming that the defendant was at his house rather than committing the murder. And it's the defendant's burden to make a substantial showing that there was reasonable probability that but for counsel's omission the result of the proceeding would have been different. And the defendant has failed this court. Again, from a common sense standpoint, he got McDonald, right? Yes. He was an accomplice. Yes. He wasn't a co-defendant. Defendant did. And then you got, so you've got a witness that you can put on and say, I'm just trying to find a, I didn't try criminal cases, but I'm just trying to find some strategic reason as a trial lawyer that not, I mean, we've got nothing to lose and everything to gain by one of those two are lying. And why not give the jury another choice to pick door number two and it's McDonald that's lying. Right. Well, the post-conviction proceeding at the second stage, it's the defendant's burden to prove by reasonable probability that but for the trial lawyer not calling the defendant's father, there's a reasonable probability that the outcome would have been different. Sure, he could have placed the defendant's father on the stand, but the decision of what witnesses to call is up to the defense attorney, and usually that is unassailable because it's the defense attorney's duty to put on the information and the witnesses that he believes would be helpful to the case, so we shouldn't second-guess the defense attorney unless under Strickland it was objectively unreasonable and the defendant was prejudiced. Even if we assume it was objectively unreasonable, the defendant has failed to show at this hearing that there was a reasonable probability that the outcome of the proceeding would have been different, even if he would have placed the father on the stand to testify. There was other evidence besides McDonald's testimony that was presented at the trial. This court on direct appeal again found the evidence was overwhelming. The defendants failed to show that by failing to place the defendant's father on the witness stand that the outcome would have been different. Sure, it would have been what McDonald's says and what the defendant's father said, but because they were related, the defense attorney here made the strategic decision not to put him on. Sure, he could have put him on if he had a reasonable belief that the defendant's father was testifying truthfully, but again, there seems to be some kind of conflict. If some defense attorney believes that, well, he's a family member, he wouldn't be a good witness, well, that's trial strategy. Well, on review, here in the appellate court, we're prohibited from judging the credibility of witnesses. True. And why is that? Because we didn't see him and hear him. Correct. Well, in this case, the defense attorney, the appellate court, didn't see or hear the defendant's father because they didn't talk to him. Right. So if we can't judge a witness's credibility without seeing or hearing him, how come the defense attorney can't? The defense attorney can act? Well, it was the defense attorney's position and its defendant's burden at this hearing to prove there was a reasonable probability that it would have been different. I don't believe that the defendant proved that at this second stage hearing. And my other argument is, well, it was rebutted by the record. And here, you have to take the defendant's affidavit as true unless it is rebutted by the record. I believe that it trumps the decision that the affidavit was true if what is in the affidavit is rebutted by the record. And here, it was clearly rebutted by the record by McDonald's testimony. McDonald testified that he had known the defendant for three years. McDonald had gone to Levina Faulkner's house, along with Louis Bailey, and it was the defendant who was there who had opened the door. The defendant then gave the handgun to Louis Bailey and told Bailey to get it over with or otherwise shoot this victim, which he did after a struggle. So my argument here is first, the defendant's argument that defense counsel was ineffective is rebutted by the record. My second argument in support of that is Lacey is directly on point. This was defense counsel's strategic decision. The defendant has failed to show that there was a reasonable probability that the outcome would have been different even if the father had testified at the hearing. With regard to the second issue, first issue in the brief, I believe that People v. Rivera is directly on point and should be followed. It's an exception to the rule regarding partial summary dismissals of post-conviction petitions. And if you don't have any questions, I'd ask that you affirm the trial judge's orders dismissing the defendant's post-conviction petitions. Thank you, Mr. Leonard. Mr. Wigman, some rebuttal?  I'm hunkering back to my days as trial counsel a long time ago, but I can very clearly hear after attacks against the state's witnesses, I can just envision right now a state's attorney saying, we don't get to choose our witnesses. Because the defendant has pointed out in this case, Your Honor, that we have these witnesses whose testimony is difficult to believe. They are drug addicts or they have criminal records, and you can't hold that against us. We get the witnesses as they come to us. And I almost find myself in the same position. And I can't imagine the state having to wrestle at all with the question of whether to bring Orlando McDonald, an admitted liar. He admitted lying as to the name that he gave the police officers when he was arrested. He admitted lying that he even knew the defendants. The state had questions about the credibility of their witness, but it was what they had. And in this case, the only thing that the defendant had should have been used, which was the testimony of his father, is going to have warrants. It's going to have difficulties, but that doesn't mean that it's invalidated as a credible theory. And when it's the only theory that you have, and when it isn't something that is affirmatively harmful to you and refuted by the record, counsel has an absolute duty to pursue that. And here, we don't even know whether this was a decision that he made because of the father's familial relationship. That's what the court surmised. But the court's not allowed to do that at that stage. At the second stage, you can't make fact-finding, you can't make credibility determinations. And it was error for the court to do so. And that's separate from the error of saying that, well, he had a good reason to not do it. If, in fact, that were the reason, I submit that it was still bad strategy. And for that reason, this should go for a third-stage hearing. The notion that this is the type of contradiction that should be applied by the court, I believe, is also wrong. To say that it's already a matter of record, that this was a strong case. Well, it was a strong case because the father's testimony wasn't provided. When you're dealing with matters outside the record, that type of determination, again, cannot be made at this stage. It has to go on to the third stage. And it's been said very clearly that when a claim is based on matters outside the record, it is not the intent of the Post-Conviction Act to adjudicate claims on the pleadings. That was People v. Tate citing the Supreme Court in Coleman. Something outside of the record cannot be said to not have had an impact on the defendant's case if it wasn't presented. Had this been presented to the jury, it likely would have changed the outcome of trial. And for that reason, counsel was negligent in his duties and derelict for, one, not talking to the father, and, two, not calling the father as a witness when it was the only option that he had. The state has also argued, again, that there is a contradiction within the record. But the contradiction is not within the affidavit in terms of whether counsel met with the father. That's the kind of contradiction that we're dealing with here. Contradictions within the affidavit that are presented within the record, refutable things. It's a question of fact that should be submitted to the jury as to whether Orlando McDonald was telling the truth or whether the father was telling the truth. That's not the kind of contradiction that is contemplated by the Post-Conviction Act, which, again, does not consider those matters which are outside of the record. This is the forum for entertaining those types of arguments, is through the Post-Conviction Act. It's the whole point of the Act. If there are no further questions, then I would thank you for your time and ask that this matter be remanded for a second-stage hearing as to partially dismissed claims and for a third-stage hearing as to the claim regarding trial counsel's ineffective assistance. Thank you both for your arguments here. That will be taken under advisement. This position will be issued and will be briefed...